UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-cv-61873-WPD

MAXIMUM MARKETING, INC., a for Profit Florida Corporation,

    Plaintiff,

vs.

REVIVA LABS, INC., a for Profit New Jersey Corporation, RENEE VIDAL, ESQ., and SENDAYCO, LLC,

    Defendants.
_____/

**DEFENDANT, SENDAYCO, LLC'S, MOTION TO DISMISS COMPLAINT AND MOTION TO STRIKE PLAINTIFF'S CLAIM FOR ATTORNEYS' FEES**

Pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(2), and 12(b)(6), and Local Rule 7.1 of the Southern District of Florida, Defendant, Sendayco, LLC ("Sendayco" or "Defendant"), hereby files its Motion to Dismiss Plaintiff, Maximum Marketing, Inc.'s ("Maximum Marketing" or "Plaintiff"), Complaint and Motion to Strike Plaintiff's Claim for Attorneys' Fees, and in support, states as follows:

I.     INTRODUCTION

This case involves allegations based on the court ordered sale of the operating assets of a New Jersey Company, Reviva Labs, Inc. ("Reviva Labs"), to an Ohio company, Sendayco. Specifically, the New Jersey Probate Court authorized the sale of the operating assets of Reviva Labs and conditioned any such sale on court approval. Despite the New Jersey court overseeing the sale and being involved in the process, Plaintiff attempts to argue in a conclusory manner that such court approved transaction is allegedly violative of Florida's Uniform Fraudulent Transfer

Act ("FUFTA") because it was predicated on Reviva Labs selling its operating assets to Sendayco to allegedly avoid payment of an obligation not yet reduced to a Final Judgment.

Despite Plaintiff's allegations, dismissal of the Complaint is warranted for two main reasons: (i) the Complaint does not, and cannot, allege any facts sufficient to establish personal jurisdiction; and (ii) the Complaint does not state any viable claim under FUFTA.

First, dismissal is warranted because this Court lacks personal jurisdiction over Sendayco. Specifically, the Court lacks general jurisdiction over Sendayco, an Ohio company, due to Sendayco's lack of contacts with Florida (supported by the affidavit of Sendayco's president attached hereto as Exhibit A), and it lacks specific jurisdiction over Sendayco as no facts were pled supporting the notion that a tortious act took place in Florida, and even if such facts were alleged, it is well established that a fraudulent transfer does not constitute a tortious act for purposes of Florida's long-arm statute. Second, Plaintiff also fails to state a claim for relief as it relies on vague assertions contradicted by the exhibits attached to the Complaint. Lastly, as no contractual or statutory basis for attorneys' fees exists, Plaintiff's prayer for attorneys' fees must be stricken. Accordingly, this Court should dismiss the Complaint with prejudice.

## II.     FACTUAL BACKGROUND

Sendayco is an Ohio limited liability company. Compl. ¶ 3, 22, 36. Reviva Labs is a New Jersey corporation with its principal place of business in New Jersey. *Id*. ¶ 2. Renee Vidal ("Vidal"), president of Reviva Labs and trustee of the stocks and interests of Reviva Labs, is also a New Jersey resident. *Id*. ¶ 4.

On or around May 3, 2021, the New Jersey probate court ordered Vidal to commence the process of selling Reviva Labs. *Id*. Ex. 3, Ex. B. Several potential buyers expressed interest, but ultimately, a sale did not occur at that time. *Id*. Ex. 3 ¶¶ 7-13. On February 1, 2022, the New Jersey

court confirmed Vidal's general authority to sell the assets of Reviva Labs, provided that Vidal "must move before this Court for specific authority to sell the stock of all or substantially all of the assets of Reviva Labs, Inc. and for approval of the agreement of sale before any such sale may be consummated." *Id*. Ex. 3, Ex. C. In January 2024, the broker for Reviva Labs presented Vidal with three letters of intent. *Id*. Ex. 3 ¶ 15. On May 26, 2024, the New Jersey court specifically authorized the sale of Reviva Labs' assets to Sendayco and approved the Agreement of Sale attached to the Certification of the Executor. Compl. Ex. 3, Ex. D.

While Reviva Labs was engaged in a search for a potential buyer, Maximum Marketing was engaged in litigation against Reviva Labs in Florida related to an alleged breach of an agreement between Reviva Labs and Maximum Marketing (the "Contract Case"). Compl. ¶ 11. Sendayco was not a party to that agreement or the Contract Case. *Id*. Ex. 2; Ex. A, Affidavit of Troy Augustine ¶¶ 17-18. According to the instant Complaint, the court in the Contract Case filed a "Judicial Findings After Bench Trial" and "Conclusions" in which the court found in favor of Maximum Marketing and against Reviva Labs and awarded damages of $477,488. Compl. ¶¶ 15, 19. The court has not yet entered final judgment. *Id*. ¶ 20, Ex. 2.

During the sale process, Sendayco interacted with Reviva Labs' representatives in New Jersey. *See* Ex. A, Affidavit of Troy Augustine, ¶ 11. Sendayco did not travel to Florida or have contacts with anyone in Florida regarding the sale of assets. *Id*. ¶¶ 11-13. Rather, Sendayco and Reviva Labs engaged in an arm's length transaction that resulted in a carefully scrutinized and court approved purchase and sale of Reviva Labs' assets. *Id*. ¶¶ 10-16; Compl. Ex. 3, Ex. D.

### III.    STANDARD OF REVIEW

**A.     Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction**

3

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "When a plaintiff fails to include sufficient allegations in his complaint to establish a prima facie case of personal jurisdiction, a defendant may assert a facial challenge to the complaint." *Ramirez v. Grp. Servs.*, No. 6:16-cv-1831-Orl-37KRS, 2017 WL 2672555 (M.D. Fla. June 20, 2017) (citing *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002)). When evaluating a facial challenge, courts do not evaluate evidence or make credibility determinations. *Home Point Fin. Corp. v. Lane*, 6:20-CV-1819-CEM-EJK, 2022 WL 22866391, at *2 (M.D. Fla. Sept. 27, 2022) (quoting *AcryliCon USA, LLC v. Silikal GmbH,* 985 F.3d 1350, 1364-65 (11th Cir. 2021))).

In addition to a facial challenge, a defendant may raise a factual challenge to the plaintiff's assertion of personal jurisdiction. When making such an argument, the court goes outside the pleadings and considers evidence submitted by the defendant. *Id*. If the defendant produces evidence disputing jurisdiction, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Id*.

**B.     Rule 12(b)(6) motion to dismiss for failure to state a claim**

"To survive a Rule 12(b)(6) motion, a complaint must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hoffman v. Alix*, 2:22-CV-466-SPC-NPM, 2023 WL 3197871, at *1 (M.D. Fla. May 2, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Bare 'labels and conclusions, and a formulaic recitation of the elements of a cause of action,'" do not suffice." *Id*. (quoting *In Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

4

Moreover, Federal Rule of Civil Procedure 8(a) provides a complaint must contain **"a short and plain statement of the claim showing that the pleader is entitled to relief."** Courts in the Eleventh Circuit have dismissed "shotgun complaints" that fail to follow this rule. Although the courts have identified four types of shotgun pleadings, the following is relevant to this case: complaints that do not separate "into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*.

## IV. MEMORANDUM OR LAW AND ARGUMENT

**A. Plaintiff Must Establish that (1) Personal Jurisdiction Exists Under Florida's Long Arm Statute and (2) Personal Jurisdiction Does Not Violate Constitutional Due Process.**

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute, and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp.*, 556 F.3d at 1274.

### 1. Florida Long-Arm Statute Does Not Cover this Action

The application of Florida's long arm statute is a question of state law, and absent some indication the Florida Supreme Court would rule differently, federal courts must follow the decisions of Florida's intermediate appellate courts. *Id*. To invoke personal jurisdiction under the Florida long-arm statute, Plaintiff must plead facts sufficient to show that Sendayco either (1) engaged in "substantial and not isolated activity" in Florida, for which the Court may exercise general jurisdiction under Fla. Stat. §48.193(2), or in the alternative, (2) committed one of the

5

enumerated acts subjecting it to specific personal jurisdiction, i.e., "jurisdiction over suits that arise out of or related to a defendants' contacts with Florida." *See,* Fla. Stat. §48.193(1)(a); *Carmouche v. Tamborlee Mgmt., Inc.,* 789 F.3d 1201, 1203-2014 (11th Cir. 2015). A plaintiff seeking to have the court exercise personal jurisdiction over a nonresident in Florida bears the burden of pleading facts sufficient to satisfy Florida's long-arm statute. *Instrumentacion, Ltda. V. Philips Electronics North America Corp.,* 951 So.2d 1001, 1002 (Fla. 3d DCA 2007). Plaintiffs have failed to even come close to meeting such burden.

**(i)     No General Jurisdiction Exists Under Fla. Stat. §48.193(2)**

First, Plaintiff fails to plead any facts supporting general jurisdiction. As allegations supporting general jurisdiction are absent, dismissal is warranted. Even if this were not the case, to assert general personal jurisdiction over a nonresident corporation, the corporation must have such "continuous and systematic" contacts with the forum state "as to render them essentially at home in the forum state." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154 (1945). This is completely lacking in the instant case. In fact, "a corporation's place of incorporation and its principal place of business are 'paradigm'" forums for properly asserting general personal jurisdiction. *Carmouche,* 789 F.3d at 1203-04. Contrary to these well-established legal tenets, Plaintiff's Complaint acknowledges that Sendayco is not home in Florida, as it is an Ohio company. Compl. ¶3, 22, 36. Specifically, Sendayco is an Ohio limited liability company with its headquarters in Ohio. Ex. A, Affidavit of Troy Augustine ¶ 7. It maintains no offices in Florida and has no employees in Florida. *Id*. ¶¶ 8-9. Accordingly, dismissal is warranted.

**(ii)    No Specific Jurisdiction Exists Under Fla. Stat. §48.193(1)(a)2 Because FUFTA Claims Do Not Satisfy Florida Long-Arm Statute**

It appears that an alleged basis for the Court's specific jurisdiction in the Complaint arises out of Fla. Stat. §48.193(1)(a)2 requiring a "tortious act within the state." Compl. ¶5. However,

6

the Court cannot exercise jurisdiction over Sendayco pursuant to §48.193(1)(a)2 based on the assertion that Sendayco violated FUFTA thereby committing a tortious act. This is true for two reasons: (i) there are no allegations that any act took place within Florida, and (ii) because it is well-settled that a "fraudulent transfer does not constitute a tortious act for purposes of Florida's long-arm statute." *Edwards v. Airline Support Group, Inc.*, 138 So. 3d 1209, 1211-12 (Fla. 4th DCA 2014).

As to the first reason, "the critical factor in deciding whether a tort committed out of state may subject the tortfeasor to personal jurisdiction in Florida is whether the cause of action arose from the act in question." *KrunchCash, LLC v. Craig*, 22-81415-CIV, 2023 WL 2487230, at *9 (S.D. Fla. Mar. 13, 2023) (quoting *Wiggins v. Tigrent, Inc.*, 147 So. 3d 76, 87 (Fla. 2d DCA 2014)). Generally, "mere injury in Florida resulting from a tort committed elsewhere is insufficient to support personal jurisdiction over a nonresident defendant." *Kaminsky v. Hecht*, 272 So. 3d 786, 788 (Fla. 4th DCA 2019) (quoting *Consol. Energy Inc. v. Strumor*, 920 So.2d 829, 832 (Fla. 4th DCA 2006)). Thus, Plaintiff's reliance on specific jurisdiction under §48.193(1)(a)2 is fatal as "specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts relate to the plaintiff's cause of action. *KrunchCash, LLC,* 2023 WL 2487230, at *10 (finding that Plaintiff has not met its burden in establishing a prima facie case of specific personal jurisdiction over Defendants under Florida's long-arm statute when asserting a FUFTA claim).

Second, Florida state and federal courts have repeatedly evaluated the application of Florida's long arm statute to FUFTA claims and have consistently determined such claims do not qualify as "tortious conduct" under Florida's long arm statute. *See KrunchCash, LLC*, 2023 WL

7

2487230, at *10; *Valle v. 3M Co.*, 647 F. Supp. 3d 1262, 1269 (N.D. Fla. 2022) ("3M's alleged FUFTA violations, therefore, are not 'tortious acts' under the statute based on binding Florida precedent."); *Edwards*, 138 So. 3d at 1211-12 (reversing order denying defendant's motion to dismiss for lack of personal jurisdiction); *Brown v. Nova Info. Sys., Inc.*, 903 So.2d 968, 969 (Fla. 5th DCA 2005) (rejecting "assertion that conspiracy to violate [FUFTA] is a tort giving rise to long-arm jurisdiction," because "a fraudulent conveyance claim has been held not to be a tort for purposes of establishing personal jurisdiction under section 48.193(1)[a](2)"); *Beta Real Corp. v. Graham*, 839 So.2d 890, 891–92 (Fla. 3d DCA 2003). Therefore, a plaintiff's "reliance on specific personal jurisdiction under 48.193(1)(a)2 is seemingly fatal with respect to its FUFTA claim." *KrunchCash, LLC*, 2023 WL 2487230, at *10.

**2. Plaintiff Fails to Establish Sufficient Contacts Between Sendayco and Florida to Satisfy Due Process.**

In addition to satisfying Florida's long arm statute, a plaintiff must prove that personal jurisdiction comports with due process. For specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria:

> (1) they must be related to the plaintiff's cause of action or have given rise to it; (2) they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and (3) they must be such that the defendant should reasonably anticipate being haled into court there.

*Hibbert v. Feller*, 6:22-CV-2193-CEM-DCI, 2023 WL 4052272, at *4 (M.D. Fla. June 16, 2023) (internal quotations omitted). The plaintiff has the burden to establish the first two prongs. *Id*. If the plaintiff satisfies that burden, courts evaluate whether jurisdiction will comport with traditional notions of fair play and substantial justice. *Id*.

Accordingly, courts first analyze whether the plaintiff's claims arise out of and relate to the defendant's contacts with the forum state. A court's "inquiry must focus on the direct causal

8

relationship between the defendant, the forum, and the litigation." *Fraser v. Smith,* 594 F.3d 842, 850 (11th Cir. 2010) (internal quotation marks omitted). Claims do not "arise out of or relate to" contacts with the forum state when the defendant has little or no contact with Florida. *See KrunchCash, LLC*, 2023 WL 2487230, at *11.

Next, courts must determine if the defendant purposefully availed itself of the privilege of conducting activities within the forum state. "To support purposeful availment, the defendant must have had contacts with the forum that were his 'own choice and not 'random, isolated, or fortuitous.'" *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1230 (11th Cir. 2023) (quoting *Ford Motor Co. v. Montana Eighth Judicial Dist. Court,* 592 U.S. 351, 359 (2021)). The defendant must have "deliberately 'reached out beyond' its home," such as by 'entering a contractual relationship centered' in the forum." *Id.* (quoting *Walden v. Fiore,* 571 U.S. 277, 285 (2014))). Depending on the conduct at issue, courts employ two different variations of the purposeful availment test: the effects test and the traditional minimum contacts test.[1]

To establish purposeful availment for intentional torts under the effects test, the tort must be "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Home Point Fin. Corp.*, 2022 WL 22866391, at *7 (quoting *Licciardello*, 544 F.3d at 1286) ("GHMC knew that Plaintiff had an office in Florida, that Lane was an employee in that office, and that Lane's coworkers that he was soliciting worked with him in Florida. If true, GHMC's acts to raid Plaintiff of its Maitland underwriting team were all aimed at Florida . . .").

---

[1] The effects test applies in cases of intentional torts. *Home Point Fin. Corp.*, 2022 WL 22866391, at *7. The Court need not determine which test applies because it lacks personal jurisdiction under both tests.

The minimum contacts analysis asks the court to assess whether the defendant's contacts with the forum state

> (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum.

*Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & DeCamp, LLP*, 6:19-CV-1908-WWB-EJK, 2021 WL 4948102, at *4 (M.D. Fla. July 6, 2021) (quoting *Louis Vuitton*, 736 F.3d at 1357). This analysis requires the court to identify all contacts between the defendant and forum state and evaluate whether those acts satisfy the different factors. *Id*.

If Plaintiff satisfies its burden of establishing the first two prongs, courts evaluate whether jurisdiction will comport with traditional notions of fair play and substantial justice, which requires balancing

> (a) the burden on the defendant; (b) the forum state's interest in adjudicating the dispute; (c) the Plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantial social policies.

*Pearson v. Deutsche Bank AG,* 21-CV-22437, 2023 WL 2610271, at *29 (S.D. Fla. Mar. 23, 2023) (internal quotation omitted).

### (i)  Plaintiff fails to plead facts supporting personal jurisdiction over Sendayco.

Sendayco asserts both a facial and factual challenge to personal jurisdiction. First and foremost, Plaintiff fails to plead any facts amounting to personal jurisdiction over Sendayco.

Plaintiff appears to assert three bases for long arm jurisdiction over defendants: (1) "violation of the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, Et Seq. ('FUFTA') thereby committing a tortious act of fraud;" (2) "Reviva Labs, Inc. pleading demands for affirmative relief on causes of action against the Plaintiff Maximum Marketing, Inc.;" and (3)

Reviva Labs entering into a contract with Plaintiff containing a forum selection clause. Compl. ¶¶ 5, 8

The only one of these allegations seemingly related to Sendayco is the FUFTA allegation. Sendayco did not enter into a contract with Plaintiff. Ex. A, Affidavit of Troy Augustine ¶ 17. Nor did Sendayco plead affirmative claims of relief against Plaintiff. *Id*. ¶ 18. As to the alleged commission of a tort, Plaintiff relies only on FUFTA, but as seen *supra,* courts have repeatedly held FUFTA alone does not qualify as a tortious act that can establish personal jurisdiction over a defendant pursuant to Florida's long arm statute. *See, e.g., KrunchCash, LLC*, 2023 WL 2487230, at \*10; *Edwards*, 138 So. 3d at 1211-12. Moreover, all acts occurred outside of Florida, and the mere fact that Plaintiff allegedly felt an injury in Florida does not satisfy Florida's long arm statute. This failure alone dooms Plaintiff's personal jurisdiction argument.

But not only does Plaintiff fail to plead facts supporting long arm jurisdiction, Plaintiff does not even address due process concerns. Personal jurisdiction requires the defendant have contacts with the forum related to the plaintiff's cause of action or that gave rise to the action. *See Hibbert*, 2023 WL 4052272, at \*4. Further, the defendant must purposefully avail itself of the privilege of conducting activities within the forum, which, even under the effects test, means intentionally aiming conduct at the forum state that caused harm the defendant should have anticipated would be suffered in the forum state. *See Home Point Fin. Corp.*, 2022 WL 22866391, at \*7. Plaintiff entirely ignores these requirements, but the facts it does allege directly contradict the exercise of personal jurisdiction.

Plaintiff acknowledges Sendayco is an Ohio company located in Ohio. Compl. ¶ 3, 22, 36. Plaintiff then describes the allegedly bad acts of the Defendants, but it does not connect Sendayco with Florida. Plaintiff does not allege Sendayco participated in any act in Florida or aimed tortious

11

conduct towards Florida or indeed that Sendayco had any contact whatsoever with Florida. The only Florida party is the Plaintiff, and Plaintiff does not allege it had *any* interaction with Sendayco. Nor can it, as established by the affidavit of Troy Augustine, which conclusively shows no connection between Sendayco and Florida regarding the sale of Reviva Labs. Sendayco is an Ohio limited liability company with its headquarters in Ohio. Ex. A, Affidavit of Troy Augustine ¶ 7. It maintains no offices in Florida and has no employees in Florida. *Id*. ¶¶ 8-9. Communications regarding the sale of Reviva Labs' assets occurred between individuals located in New Jersey and Ohio. *Id*. ¶ 11. No one from Sendayco visited Florida in regards to the sale nor did Sendayco communicate with Maximum Marketing or anyone else in Florida regarding the sale. *Id*. ¶ 11. Rather, Sendayco and Reviva Labs engaged in an arm's length transaction that resulted in a carefully scrutinized and court approved purchase and sale of Reviva Labs' assets. *Id*. ¶¶ 10-16; Compl. Ex. 3, Ex. D. Lastly, Sendayco has not entered into any contract with Maximum Marketing nor was Sendayco involved in the Contract Case in Florida. *Id*. ¶¶ 17-18.

As set forth in the Complaint, Sendayco's sole role was purchasing the operating assets of Reviva Labs, a New Jersey company. Compl ¶¶ 2, 33. The sale did not occur in Florida, and in fact, the probate court in New Jersey oversaw and approved the sale. *Id*. Ex. 3, Exs. B-D. For a court to have personal jurisdiction, a plaintiff must plead facts connecting the specific claims against the defendant with the defendant's contacts with the forum state. Not only does Plaintiff fail to allege its claims arose out of Sendayco's contacts with Florida, it does not allege any contacts between Sendayco and Florida.

Additionally, personal jurisdiction does not comport with traditional notions of fair play and substantial justice. *See Pearson,* 2023 WL 2610271, at *29. Sendayco is based in Ohio and should not be forced to spend the resources to defend itself in Florida against actions that did not

occur in Florida. Florida also has no specific interest in resolving this dispute because the sale did not occur in Florida, and although Plaintiff is based in Florida, Reviva Labs and Vidal are not Florida residents. Thus, Florida is not a convenient and efficient forum for all of the parties.

In sum, Plaintiff's claim did not arise out of Sendayco's contacts with Florida because Sendayco conducted no activities in Florida related to the instant action. Nor did Sendayco direct any activities into Florida such that it could have anticipated harm to Plaintiff. Therefore, not only does Plaintiff fail to plead personal jurisdiction, the court lacks personal jurisdiction over Sendayco, and any attempt to amend the complaint would be futile. Accordingly, Sendayco requests the complaint be dismissed with prejudice.

**B.    Plaintiff Fails to State a Claim for Relief Against Sendayco.**

    **1.  FUFTA requires showing an actual intent to hinder, delay, or defraud, or that a transfer was made without receiving a reasonably equivalent value in exchange for the transfer.**

"FUFTA was promulgated to prevent an insolvent debtor from transferring assets out of the reach of its creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors." *Onemata Corp. v. Rahman*, 20-CV-62002, 2024 WL 4068653, at *4 (S.D. Fla. Aug. 28, 2024), *report and recommendation adopted*, 0:20-CV-62002-WPD, 2024 WL 4056794 (S.D. Fla. Sept. 5, 2024). A creditor can bring actual or constructive fraudulent transfer claims under FUFTA. *Bansal v. TD Ameritrade, Inc.*, 23-81539-CIV, 2024 WL 3009423, at *10 (S.D. Fla. June 7, 2024). To plead a cause of action for fraudulent transfer under FUFTA, a plaintiff must "allege (1) there was a creditor sought to be defrauded; (2) a debtor intending fraud; and (3) conveyance of property which could have been available to satisfy the debt." *Oginsky v. Paragon Props. Of Costa Rica*, 784 F. Supp. 2d 1353, 1369-70 (S.D. Fla. 2011).

Section 726.105 provides for claims of actual fraud "if the debtor made the transfer or incurred the obligation: (a) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." § 726.106(1)(a), Fla. Stat. Because of difficulty in proving actual intent, FUFTA looks to indicia of intent, commonly referred to as "badges of fraud," that are used to establish actual intent. § 726.106(2)(a)-(k), Fla. Stat.

Creditors may also have claims for constructive fraudulent transfer if the debtor transferred property

> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> 2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

§ 726.105(1)(b); § 726.106(1)(b), Fla. Stat. (constructive fraud claim for transfer of property made "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction . . . ."); *Kapila v. Warburg Pincus, LLC*, 8:21-CV-2362-CEH, 2024 WL 1382398, at *9 (M.D. Fla. Mar. 31, 2024) ("FUFTA's constructively fraudulent transfers are set forth in §§ 726.105(1)(b) and 726.106(1).").

   2. **Plaintiff fails to state a claim for relief.**

Plaintiff's Complaint is a confusing mess that fails to specify what sections of FUFTA form the foundation for its claim. *See* Compl. ¶¶ 5, 7, 29, 45 (conclusory referring only to Fla. Stat. § 726.101, Et. Seq.). This shotgun pleading approach makes it impossible for Sendayco to understand the claims against it and prepare a response and requires dismissal as an improper

14

shotgun pleading. *See Onemata Corp.*, 2024 WL 4068653, at *7 (finding complaint to be a shotgun pleading because "although [creditor] argues that it alleges claims for both actual and constructive fraud, . . . it has nonetheless failed to allege the specific elements of each claim in separate counts").

In the Complaint, Plaintiff, in a conclusory manner, alleges an intent to defraud. Compl. at ¶¶28, 43. However, this type of "formulaic recitation of a cause of action's elements [that] will not do." *Oginsky,* 784 F. Supp. 2d at 1371 (finding the only allegation of Defendants' intent in that "Paragon made the transfers to Defendants with the actual intent to hinder, delay, or defraud Plaintiffs and members of the class from obtaining the monies Paragon owed them" was insufficient). Aside from merely alleging the statutory buzzwords in a conclusory manner, the Complaint contains no actual factual allegations to support these conclusory statements. Plaintiff needed to plead an "actual intent to hinder, delay, or defraud any creditor." *See In re Bal Harbour Quarzo, LLC*, 623 B.R. 903, 917 (Bankr. S.D. Fla. 2020) ("Either way, the Trustee fails to plausibly allege these transfers were made with actual intent to hinder or delay BHQ's creditor's, or with fraudulent intent to hinder or delay BHQ's creditors."); *Onemata Corp.*, 2024 WL 4068653, at *7 (dismissing claim in part because plaintiff did not allege "actual intent to hinder, delay or defraud"). Plaintiff does not plead any facts plausibly supporting such action or intent.

Nevertheless, to the extent that Plaintiff's Complaint is based on constructive fraudulent transfer claims (which is not entirely clear based on the manner Plaintiff plead its Complaint), Plaintiff still fails to state a claim. If Plaintiff intends a constructive fraud claim, it must do so with particularity. However, aside from merely alleging certain statutory buzzwords in a conclusory fashion, the Complaint contains no actual factual allegations to support these conclusory statements. Plaintiff simply repeats the legal standard by alleging Sendayco acted with a fraudulent intent and conspired to strip assets from Reviva. Compl. ¶¶ 44, 46-47. But Plaintiff fails to explain

15

what exactly Sendayco or the other Defendants did that was fraudulent. As Plaintiff even admits, the Court has not yet entered final judgment in the Contract Case, so Reviva Labs is under no obligation to pay Plaintiff any judgment. Compl. ¶ 20. Selling assets is not itself a fraudulent act, and Plaintiff presents no facts showing why the sale of Reviva Labs' assets may be an attempt to avoid payment. Accordingly, Plaintiff's allegations are devoid of any ultimate facts necessary to proceed with a FUFTA claim. *See Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.,* 2011 WL 1232986 at *3 (S.D. Fla. Mar. 30, 2011) (granting motion to dismiss FUFTA claim where "no factual allegations as to the nature of the transfer [were] made"); *Columbia Cas. Co. v. W. Jacksonville Care & Rehab. Ctr., LLC,* 2019 WL 5103336 at*3 (M.D. Fla. June 17, 2019) (recommending dismissal of the complaint that merely alleged five badges of fraud as they are written in the statute).

  Further, the conclusory allegations of intent are contradicted by Plaintiff's own Complaint and the exhibits attached thereto. If it is taken that Plaintiff's claims are based on a constructive fraud theory, it would have to allege Reviva Labs sold its assets "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation." However, Plaintiff makes no such allegation. In fact, Plaintiff does not reference the sale price at all. Instead, Plaintiff attaches as exhibits orders from the New Jersey Probate Court explicitly approving the sale. Compl. Ex. 3, Ex. D. Accordingly, the exhibits make clear that there can be no intent to defraud as (i) the May 3, 2021 Court Order specifically instructed Defendant, Vidal, to commence the process of selling the operating assets of Defendant, Riva, (ii) the February 1, 2022 Order confirmed Vidal's authority to sell Reviva's assets; and (iii) the May 20, 2024 Order approved the sale of the assets of Reviva. Thus, based on the exhibits alone it is clear that the sale and subsequent purchase of Reviva Labs' assets was carefully scrutinized and court approved. This was not a case where Plaintiff received

a judgment and Reviva Labs hurriedly sold to the first buyer for any amount it could get to defraud the judgment creditor. In fact, the documents Plaintiff attached to its Complaint show the exact opposite. If an exhibit contradicts an allegation, the exhibit controls, and in this case, the exhibit shows a court approved sale that occurred after years of court involvement, not an unreasonably low sales price. *See Griffin Indus., Inc.*, 496 F.3d at 1206 ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern").

Moreover, Plaintiff alleges Reviva Labs did not distribute the proceeds from the sale to Plaintiff. Compl. ¶ 42. That appears to be the real problem. Reviva Labs received payment for the sale of its assets and allegedly did not give any of those funds to Plaintiff. Even assuming this to be true and assuming Plaintiff had a right to the proceeds, such allegation does not involve Sendayco nor is it a fraudulent transfer claim. Plaintiff does not argue Sendayco paid an unreasonably low amount for the assets of Reviva Labs, and other than conclusory statements, Plaintiff does not allege how the parties attempted to transfer assets to avoid paying Plaintiff an amount that is not yet due. Accordingly, Plaintiff fails to state a fraudulent transfer claim.

C. **Plaintiff's Request for Attorneys' Fees Must be Stricken**

Under Florida law, absent a specific statutory or contractual provision, a prevailing litigant has no general entitlement to attorney's fees." *Int'l Fid. Ins. Co. v. Americaribe-Moriatrty JV,* 906 F.3d 1329, 1335 (11th Cir. 2018). Accordingly, Florida courts may grant a motion to strike a demand for attorney's fees, where the plaintiff fails to plead a contractual or statutory basis or none exists. *Italiano v. Jones Chems.,* 908 F. Supp. 904, 907 (M.D. Fla. 1995); *Port-a-Weld, Inc. v. Padula & Wadsworth Const., Inc.*, 984 So. 2d 564, 569 (Fla. 4th DCA 2008) (citing *Price v. Tyler*,

17

890 So. 2d 246, 250 (Fla. 2004)) (emphasis added). *See also, Kapila v. AT & T Wireless Services, Inc.,* 973 So. 2d 600, 602 (Fla. 3d DCA 2008).

In the instant case, Plaintiff fails to cite any authority entitling it to attorneys' fees. In fact, Plaintiff cannot assert a statutory basis as FUFTA contains no provision that explicitly provides for an award of attorney's fees. *See,* Fla. Stat. §726.101, *et seq.; see also Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs.,* 872 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012) (striking attorney fee demand because FUFTA lacks a fee provision). Likewise, the Eleventh Circuit has already found that attorneys' fees are not recoverable under FUFTA. *SE Prop. Holdings, LLC v. Welch,* 65 F. 4th 1335, 1350 (11th Cir. 2023). Accordingly, there is no basis for attorneys' fees under FUFTA.

Further, to the extent that Plaintiff relies on the Representation Agreement, that argument likewise fails, as Sendayco is not a party to the Representation Agreement and is not bound by its terms. Therefore, the prayer for attorney's fees must be stricken. *See, Inflot World Wide, Inc. v. Glukhow,* 2015 WL 13776761 at *5-6 (S.D. Fla. March 10, 2015) (granting Defendant's motion to strike Plaintiff's request for attorney's fees because there was no contract in place between the parties for attorney's fees).

## V. CONCLUSION

WHEREFORE, Defendant, Sendayco, LLC, respectfully requests that this Honorable Court enter an Order granting this Motion and dismissing Plaintiff's Complaint, in its entirety, with prejudice, striking Plaintiff's claim for attorney's fees, or granting Sendayco any other relief this Court deems just and proper.

        Respectfully submitted,

        **KLUGER, KAPLAN, SILVERMAN,**
        **KATZEN & LEVINE, P.L.**
        *Counsel for Defendant, Sendayco, LLC*
        Citigroup Center, 27th Floor
        201 South Biscayne Boulevard
        Miami, Florida 33131
        Telephone: (305) 379-9000
        Facsimile: (305) 379-3428

       By: */s/ Marko Cerenko*
        **Marko F. Cerenko, Esq.**
        Fla. Bar. No. 21501
        mcerenko@klugerkaplan.com

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on October 17, 2024, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF and served on all CM/ECF registered users identified in the service list.

| | |
|---|---|
| Melanie A. Cambridge, P.A.<br>The Dadeland Law Center at the Metropolis<br>7340 S.W. 90th Street<br>Miami, Florida 33156<br>Tel.: (305) 582-2445<br>mcambridgelaw@gmail.com<br>*Counsel for Plaintiff* | Craig J. Shankman, Esq.<br>Marcus A. Nielsen, Esq.<br>Boyd Richards Parker & Colonnelli, P.L.<br>100 S.E. Second Street, Suite 2600<br>Miami, Florida 33131<br>Tel.: (786) 425-1045<br>cshankman@boydlawgroup.com<br>mnielsen@boydlawgroup.com<br>*Counsel for Defendants, Reviva Labs, Inc. and Renee Vidal, Esq.* |

       By: */s/ Marko Cerenko*
        **Marko F. Cerenko, Esq.**